## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| CHERYL BESSER, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | Complaint – Class Action |
| FIRST NATIONAL BANK OF MICHIGAN, | |
| Defendant. | Jury Demanded |

## CLASS ACTION COMPLAINT – JURY DEMANDED

Comes now Cheryl Besser, ("Plaintiff"), on behalf of herself and all others similarly situated and alleges as follows:

### INTRODUCTION

1.     Plaintiff Besser is a blind individual.  Her condition was caused by juvenile rheumatoid arthritis and she has been completely blind for the past thirty-two years.

2.     As Plaintiff goes about her daily business, she regularly has occasion to make use of the banking services that are available through Automated Teller Machines ("ATMs"), so long as those ATMs are accessible to the blind. As discussed at length below, federal law includes very specific provisions calculated to guarantee that ATMs are accessible to blind and visually-impaired individuals.[1]

---

[1]     Plaintiff invokes the term "accessibility" as a defined term of art.  That is, "accessibility" is specifically defined in the applicable statutes and regulations discussed at length in the text below and Plaintiff is using the term in the context of those definitions, and not in the abstract.

**CLASS ACTION COMPLAINT**                                                                **Page 1**

3.      If a given ATM does not include the accessibility features that are mandated by federal law, blind consumers like Plaintiff cannot use the ATM independently and are thus faced with the prospect of having to share private banking information with other individuals to complete a banking transaction at the ATM.  The mandatory ATM accessibility requirements at issue in this lawsuit are calculated to permit blind and visually impaired individuals to use ATMs independently, without having to divulge private banking information to a third party.

4.      Notwithstanding that federal law mandates very specific ATM accessibility requirements for the blind, a March 7, 2012 *Wall Street Journal* article noted the widely publicized fact that at least 50% of the nation's ATMs remain inaccessible to blind individuals in violation of these laws.  In that same article, a spokesperson for the National Federation of the Blind ("NFB") was quoted as saying: "It is absolutely unacceptable that at this late date there are hundreds of thousands of ATMs that are still not accessible to blind people."

5.      As is the case nationally, a significant percentage of the ATMs throughout Michigan continue to violate accessibility requirements mandated by federal law.  Many inaccessible ATMs are located within the geographic zone that Plaintiff typically travels as part of her everyday activities.  This shortage of accessible ATMs severely limits the ability of Plaintiff and other blind and visually impaired individuals to benefit from the banking services made available to the American consumer public through ATMs.

6.      The NFB and other blind advocacy groups have been fighting to achieve ATM accessibility since at least as early as 1999, at which time the NFB began to work with the manufacturers of ATMs and the banking industry to encourage the addition of  voice guidance and universal tactile keypads, *inter alia*, to ATM machines.

**CLASS ACTION COMPLAINT**                                                    **Page 2**

7.      While some financial institutions have worked pro-actively to achieve compliance with federal ATM accessibility requirements that impact the blind community, the NFB and other blind advocacy organizations have pursued civil litigation against financial institutions which remain in violation of accessibility requirements long after those accessibility requirements were first introduced.[2]

8.      As noted above, to the extent that a given ATM does not comply with the accessibility requirements mandated by federal law, it is nearly impossible for Plaintiff and others similarly situated to independently use that ATM.[3]

9.      After March 15, 2012, Plaintiff Besser visited two ATMs owned and operated by Defendant First National Bank of Michigan ("Defendant") located at 5313 West Main Street, Kalamazoo, Michigan, 49009 (the "Subject ATM 1"), and at 348 West Michigan Avenue, Kalamazoo, Michigan, 49007 (the "Subject ATM 2")(collectively, the "Subject ATMs").  The Subject ATMs are inaccessible to the blind in violation of applicable law, as is described in detail in the text below.

10.      The Subject ATM 1 is located approximately four (4) miles from Plaintiff Besser's home, and the Subject ATM 2 is approximately one (1) mile from her home.  The Subject ATMs are within the geographic zone that she typically travels as part of her everyday activities.  Plaintiff Besser will continue to regularly visit the ATMs in the future as part of her

---

[2]      The history of the specific accessibility requirements applicable to ATMs is discussed in detail in the text below.

[3]      To understand how difficult it would be for a blind person to use an ATM that does not include the accessibility features at issue in this lawsuit, a sighted individual need only close his or her eyes, approach the ATM and attempt to perform a banking transaction—any transaction. It is impossible to perform the transaction without vision because the input modalities for the transaction rely upon visual cues, which are of course meaningless to somebody who is blind. That is why an ATM is not accessible to a blind individual unless it offers voice guidance and all of the additional accessibility requirements that are mandated by the laws at issue.

effort to locate accessible ATMs that she personally can use within the geographic zone that she typically travels as part of her everyday activities, and on behalf of the blind community, generally.

11.     Plaintiff alleges violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (the "ADA") and its implementing regulations.

12.     On behalf of a class of similarly situated individuals, Plaintiff seeks a declaration that Defendant's ATMs violate federal law as described and an injunction requiring Defendant to update or replace its ATMs so that they are fully accessible to, and independently usable by, blind individuals. Plaintiff also requests that once Defendant is fully in compliance with the requirements of the ADA, the Court retain jurisdiction for a period of time to be determined to ensure that Defendant has adopted and is following an institutional policy that will, in fact, cause Defendant to remain in compliance with the law.

## JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction over the ADA claims asserted herein pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

14.     Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

15.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1) and (2) in that this is the judicial district in which Defendant resides, and in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

16.     Plaintiff, Cheryl Besser, is and, at all times relevant hereto, was a resident of the State of Michigan.  Plaintiff Besser is and, at all times relevant hereto, has been legally blind and

is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the

regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

17.     Defendant, First National Bank of Michigan is a bank organized under the laws of

the United States and is headquartered at 348 West Michigan Avenue, Kalamazoo, Michigan,

49007.  Defendant is a public accommodation pursuant to 42 U.S.C. § 12181(7)(F) which offers

banking services through its ATMs.

## TITLE III OF THE ADA

18.     On July 26, 1990, President George H.W. Bush signed into law the ADA, a

comprehensive civil rights law prohibiting discrimination on the basis of disability.

19.     The ADA broadly protects the rights of individuals with disabilities with respect

to employment, access to State and local government services, places of public accommodation,

transportation, and other important areas of American life.

20.     Title III of the ADA prohibits discrimination in the activities of places of public

accommodation and requires places of public accommodation to comply with ADA standards

and to be readily accessible to, and independently usable by, individuals with disabilities.  42

U.S.C. § 12181-89.

21.     On July 26, 1991, the Department of Justice ("DOJ") issued rules implementing

Title III of the ADA, which are codified at 28 CFR Part 36.[4]

22.     Appendix A of the 1991 Title III regulations (republished as Appendix D to 28

CFR part 36) contains the ADA standards for Accessible Design (1991 Standards), which were

---

[4]     The DOJ is the administrative agency charged by Congress with implementing the
requirements of the ADA.

**CLASS ACTION COMPLAINT**                                                    **Page 5**

based upon the Americans with Disabilities Act Accessibility Guidelines (1991 ADAAG) published by the Access Board on the same date.[5]

23.     In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

24.     In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ABA Accessibility Guidelines.

25.     The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

26.     On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

_____

[5]     The Access Board was established by section 502 of the Rehabilitation Act of 1973. 29 U.S.C.§ 792. The Board consists of 13 public members appointed by the President, the majority of whom must be individuals with disabilities, and the heads of the 12 Federal departments and agencies specified by statute, including the heads of the Department of Justice and the Department of Transportation. Originally, the Access Board was established to develop and maintain accessibility guidelines for facilities designed, constructed, altered, or leased with Federal dollars under the Architectural Barriers Act of 1968. 42 U.S.C. § 4151 *et seq.* The passage of the ADA expanded the Access Board's responsibilities.
        The ADA requires the Access Board to "issue minimum guidelines . . . to ensure that buildings, facilities, rail passenger cars, and vehicles are accessible, in terms of architecture and design, transportation, and communication, to individuals with disabilities." 42 U.S.C. § 12204. The ADA requires the DOJ to issue regulations that include enforceable accessibility standards applicable to facilities subject to Title III that are consistent with the "minimum guidelines" issued by the Access Board, 42 U.S.C. § 12134(c), 12186(c), but vests with the Attorney General sole responsibility for the promulgation of those standards that fall within the DOJ's jurisdiction and enforcement of the regulations.
        The ADA also requires the DOJ to develop regulations with respect to existing facilities subject to Title III.

**CLASS ACTION COMPLAINT**                                                 **Page 6**

27.     On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

28.     The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards").  The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010.  The 2010 Standards consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part 36.[6]

## THE ADA HAS LONG REQUIRED THAT FINANCIAL INSTITUTIONS THAT OWN, OPERATE, CONTROL AND/OR LEASE ATMS PROVIDE ATMS THAT ARE FULLY ACCESSIBLE AND INDEPENDENTLY USABLE BY BLIND PEOPLE

29.     Since the enactment of the ADA in 1991, banks and financial institutions which provide banking services through ATMs have been required to ensure that all banking services available at the ATM are fully accessible to, and independently usable by, individuals who are blind.  The 1991 DOJ Standards required that "instructions and all information for use shall be made accessible to and independently usable by persons with vision impairments."  28 CFR part 36, App. A. section 4.34.4.

30.     Initially, the ADA and its implementing regulations did not provide technical details defining the steps required to make an ATM fully accessible to and independently usable by blind individuals.

31.     However, after a lengthy rulemaking process wherein the Access Board entertained extensive input from all stakeholders, the 2004 ADAAGs adopted very specific guidelines calculated to ensure that ATM banking services were, in fact, fully accessible to, and independently usable by, individuals who are blind.

---

[6]     Though the Effective Date of the 2010 Standards was March 15, 2011, the communication elements of Chapter 7 of the Standards—which frame Plaintiff's allegations in this case—did not become effective until March 15, 2012, at which time the 2010 Standards became enforceable through civil actions by private plaintiffs.

**CLASS ACTION COMPLAINT**                                                                **Page 7**

32.     Section 220.1 of the 2004 ADAAGs stated that "where automatic teller machines . . . are provided, at least one of each type provided at each location shall comply with Section 707."

33.     In turn, Section 707 of the 2004 ADAAGs delineated very precise accessibility guidelines for ATMs, including guidelines calculated to ensure that ATMs are fully accessible to, and independently usable by, visually impaired individuals.  These guidelines included, *inter alia*, the following elements:  ATMs shall be speech enabled (i.e. talking ATMs)—Section 707.5; input controls shall be tactilely discernible—Section 707.6; function keys shall have specific tactile symbols—Section 707.6.3.2; Braille instructions shall be provided for initiating the speech mode.

34.     As noted, the 2010 Standards adopt the 2004 ADAAGs.  The communication elements of the 2010 Standards are set forth at Section 7-- including, in relevant part, the elements which are expressly calculated to make ATMs fully accessible to, and independently usable by, visually impaired individuals.  The Section 7 communication elements became fully effective on March 15, 2012.[7]

35.     Defendant owns, operates, controls and/or leases a place of public accommodation.

36.     Defendant's ATMs are not fully accessible to, and independently usable by, blind individuals.  Some of Defendant's ATMs do not include functional voice guidance and suffer from myriad additional violations of Section 7 of the 2010 Standards.

---

[7]     The DOJ has consistently taken the position that the communication-related elements of ATMs are auxiliary aids and services, rather than structural elements. *See* 28 CFR part 36, app. B at 728 (2009).  Thus, the 2010 Standards do not provide a safe-harbor provision for implementation of these requirements unless compliance would cause an "undue hardship" upon a public accommodation.

**CLASS ACTION COMPLAINT**                                                                              **Page 8**

37.     Defendant does not have an institutional policy that is reasonably calculated to ensure that its ATMs be fully accessible to, and independently usable by, visually impaired individuals, as those terms are informed by Section 7 of the 2010 Standards.

## VIOLATIONS AT ISSUE

38.     After March 15, 2012, Plaintiff Besser visited Defendant's ATMs located at 5313 West Main Street, Kalamazoo, Michigan, 49009 (the "Subject ATM 1"), and at 348 West Michigan Avenue, Kalamazoo, Michigan, 49007 (the "Subject ATM 2").

39.     When Plaintiff visited Defendant's ATMs, she had in her possession an ATM card, and headphones that are compatible with the 2010 Standards, and intended to avail herself of the banking services offered through Defendant's ATMs.

40.     The Subject ATM 1 is within the geographic zone that Plaintiff Besser typically travels as part of her everyday activities as it is located within four (4) miles from her home.

41.     At the time of the visit, the Subject ATM 1 violated Chapter 7 of the 2010 Standards in that there was no functional voice-guidance feature (Section 707.5), and there were no features calculated to provide blind and visually-impaired users with the same degree of privacy of input and output as is provided for sighted individuals (Section 707.4).

42.     The Subject ATM 2 is within the geographic zone that Plaintiff Besser typically travels as part of her everyday activities as it is located within one (1) mile from her home.

43.     At the time of the visit, the Subject ATM 2 violated Chapter 7 of the 2010 Standards in that there was no functional voice-guidance feature (Section 707.5), and there were no features calculated to provide blind and visually-impaired users with the same degree of privacy of input and output as is provided for sighted individuals (Section 707.4).

44.     To date, Plaintiff has not had the practical ability to use the Subject ATMs because they are in violation of the 2010 Standards (and prior to the effective date of the 2010 Standards, the Subject ATMs were not otherwise readily accessible to or independently usable by blind individuals).

45.     Based upon an investigation performed on Plaintiff's behalf, Plaintiff has actual notice that additional ATMs in Defendant's ATM network are similarly in violation of Chapter 7 of the 2010 Standards. Plaintiff would visit these additional ATMs but for the violations of which she has actual notice.

46.     Plaintiff will continue to attempt to use the Subject ATMs because she wants to identify convenient accessible ATM options within the geographic zone that she typically travels as part of her everyday activities, and she wants to increase ATM accessibility for the blind community, generally. However, so long as the Subject ATMs continue to violate Section 7, Plaintiff will be unable to use them independently and will be, thereby, deterred from visiting them.

47.     Though Defendant has centralized policies regarding the management and operation of its ATMs, Defendant does not have a plan or policy that is reasonably calculated to cause its ATMs to be in timely compliance with Chapter 7 of the 2010 Standards, as is demonstrated by the fact that its network remains out of compliance.

48.     Plaintiff uses ATMs that meet the accessibility requirements of the 2010 Standards, but these ATMs are often not conveniently located.

49.     A significant percentage of the ATMs that are located within the geographic zone that Plaintiff typically travels as part of her everyday activities do not comply with the 2010 Standards and are therefore inaccessible to blind individuals like Plaintiff.

**CLASS ACTION COMPLAINT**                                                              **Page 10**

50.     In contrast to an architectural barrier at a public accommodation, wherein a remediation of the barrier to cause compliance with the ADA provides a permanent or long-term solution, the addition of, or repair to, a speech enabling function (and other related accessibility requirements) provided at the ATM of a public accommodation requires periodic monitoring to confirm, not only that the public accommodation is in compliance in the first instance, but also that the public accommodation remains in compliance.

51.     Without injunctive relief, Plaintiff will continue to be unable to independently use Defendant's ATMs in violation of their rights under the ADA.

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of herself and all legally blind individuals who have attempted to access, or will attempt to access, Defendant's ATMs.

53.     The class described above is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

54.     Typicality:  Plaintiff's claims are typical of the claims of the members of the class.  The claims of the Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

55.     Common Questions of Fact and Law:  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendant's failure to make its ATMs fully accessible and independently usable as above described.

**CLASS ACTION COMPLAINT**                                                                          **Page 11**

56.     The questions of fact and law common to the class include but are not limited to the following:

        a.     Whether Defendant is a "public accommodation" under the ADA;

        b.     Whether Defendant's conduct in failing to make its ATMs fully accessible and independently usable as above described violated the ADA, 42 U.S.C. § 12101 et seq.; and

        c.     Whether Plaintiff and members of the class are entitled to declaratory and injunctive relief, and also costs and/or attorneys' fees for Defendant's acts and conduct.

57.     <u>Adequacy of Representation:</u>  Plaintiff is an adequate representatives of the class because her interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.

58.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

<b><u>SUBSTANTIVE VIOLATION</u></b>

59.     The allegations contained in the previous paragraphs are incorporated by reference.

60.     Defendant has discriminated against Plaintiff and the Class in that it has failed to make its ATM banking services fully accessible to, and independently usable by, individuals who are blind in violation of Section 707 of the 2010 Standards, as described above.

61.     Complying with the ADA and Section 707 of the 2010 Standards would neither fundamentally alter the nature of Defendant's banking services nor result in an undue burden to Defendant.

62.     Defendant's conduct is ongoing, and, given that Defendant has not complied with the ADA's requirements that public accommodations make ATM services fully accessible to, and independently usable by, blind individuals—as specifically defined in Section 707 of the 2010 Standards, Plaintiff invokes her statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

63.     Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it is fully in compliance with the mandatory requirements of the ADA that are discussed above, Defendant's non-compliance with the ADA's requirements that its ATMs be fully accessible to, and independently usable, by blind people is likely to recur.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the members of the class, prays for:

a.      A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above (specifically including Section 707 of the 2010 Standards);

b.      A permanent injunction which directs Defendant to take all steps necessary to bring its ATMs into full compliance with the requirements set forth in the ADA, and its implementing regulations, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that all of its ATMs are fully in compliance with the relevant requirements of the ADA to

**CLASS ACTION COMPLAINT**                                          **Page 13**

ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain in compliance with the law;

c.     An Order certifying the class proposed by Plaintiff, and naming Plaintiff as class representative and appointing her counsel as class counsel;

d.     Payment of costs of suit;

e.     Payment of reasonable attorneys' fees; and,

f.     The provision of whatever other relief the Court deems just, equitable and appropriate.


Dated:  May __, 2013                          Respectfully Submitted,

                                             */s/ Daniel O. Myers*

                                             Daniel O. Myers, Esquire (P49250)
                                             The Law Offices of Daniel O. Myers
                                             100 Park Street
                                             Traverse City, Michigan  49684
                                             Phone: (231) 929-0500 ext. 122
                                             Fax: (231) 929-0504
                                             Email: dmyers@domlawoffice.com
                                             Website: www.domlawoffice.com

                                             Gary F. Lynch, Esquire
                                             CARLSON LYNCH LTD
                                             PNC Park
                                             115 Federal Street, Suite 210
                                             Pittsburgh, Pennsylvania 15212
                                             www.carlsonlynch.com
                                             (p) 412.322.9243
                                             (f) 412.231.0246


**CLASS ACTION COMPLAINT**                                      **Page 14**